Pearl KASAKAITAS, etc., Plaintiff,

v.

HERITAGE MUTUAL INSURANCE CO., Defendant.

No. 98CV7698.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 9, 1999.

George C. Rogers, Toledo, OH, for Pearl Kasakaitas, Administratrix of the Estate of Thomas P Kasakaitas, plaintiff.

Renisa A. Dorner, Wise & Dorner, Toledo, OH, for Heritage Mutual Insurance Co., defendant.

*MEMORANDUM OPINION*

KATZ, District Judge.

This matter is before the Court on Defendant's motion for judgment on the pleadings, Plaintiff's opposition and Defendant's reply. Also before the Court is Plaintiff's request for judgment on the pleadings[1], Defendant's opposition and Plaintiff's reply thereto. Defendant also moves to strike portions of Plaintiff's memorandum in opposition. Subject matter jurisdiction is pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

Thomas P. Kasakaitas was injured in a vehicular accident with an uninsured motorist on July 12, 1998. The following day, presumably from his injuries, Mr. Kasakaitas died. Mr. Kasakaitas and his wife were insureds under an auto policy issued by Heritage Mutual Insurance Company ("Heritage"), which was in effect at the time of the accident. Contained within the policy was a provision for uninsured motorists coverage.

Following the accident, decedent's wife, Pearl Kasakaitas, submitted a claim under the uninsured motorist provision for the $100,000 for each accident under the policy. Heritage agreed that the insureds were covered under the policy, but contended that its limit of liability as to the uninsured motorists provision was $50,000. As a result, Heritage tendered payment of $50,000 in accordance with its interpretation of the policy provisions.

Mrs. Kasakaitas, as administratrix of the estate of Thomas P. Kasakaitas, initiated this declaratory judgment action in state court regarding her rights under the policy. She requests that the Court declare that the limits of liability do not limit the estate's survival action, her "Sexton" claim, and the beneficiaries' wrongful death claim. Plaintiff also alleges a claim of bad faith against Heritage.

Following removal of this action from state court, the Defendant moved for judgment on the pleadings. Those issues now have been fully briefed and are ready for disposition.

**MOTION FOR JUDGMENT ON THE PLEADINGS**

**A. Standard**

■ On a motion for judgment on the pleadings, all well-pleaded allegations of the non-moving party must be taken as true. *United States v. Moriarty*, 8 F.3d

---

1. Plaintiff did not submit a separate motion for judgment on the pleadings but sets forth her request within her opposition to Defendant's motion for judgment on the pleadings.

329, 332 (6th Cir.1993) citing *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973). In contrast, all allegations of the moving party which have been denied by the non-moving party must be taken as false. Judgment is granted only where there is no material issue of fact involved and the moving party is entitled to judgment as a matter of law. *Paskvan v. City of Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

## B. Uninsured Motorist Limitations

■ In *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d 500, 620 N.E.2d 809 (1993), the Ohio Supreme Court determined that "each person who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01, has a separate claim subject to a separate per person policy limit." *Id.* at paragraph three of the syllabus. Subsequently, the Ohio legislature enacted Amended Substitute Senate Bill No. 20 ("S.B. 20"), which states in pertinent part:

(H) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding chapter 2125 of the Revised Code, **include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such poli-cy limit shall constitute a single claim.** Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.

O.R.C. § 3937.18(H). (Emphasis added.) This legislation was specifically aimed at superseding the holdings contained in *Savoie*[2]. When considering a claim for uninsured motorist benefits, the scope of coverage is determined by the law in effect at the time the parties entered into the contract. *Ross v. Farmers Ins. Group of Companies*, 82 Ohio St.3d 281, 695 N.E.2d 732 (1998). Construing the factual pleadings by Plaintiff as true, it appears that the period of coverage under the policy was from March 25, 1998 through March 25, 1999. As the statutory law in effect during that time frame is set forth in O.R.C. § 3937.18 this is the applicable law in this instance.

■ The policy provisions relating to uninsured motorist coverage as contained in the applicable policy are as follows:

1. UNINSURED MOTORIST COVERAGE

a. The limits of liability shown in the Declarations for uninsured motorist bodily coverage apply regardless of the number of vehicles described in the Declarations, **insured persons,** claims, claimants, policies or vehicles involved in the accident. Under no circumstances may the limits applying to more than one vehicle be added together to increase the applicable limit of liability.

(1)The "each person" limit of liability is the most **we** will pay for all damages because of **bodily injury** suf-

---

2. It is the intent of the General Assembly in enacting division (H) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in its October 1, 1993 decision in *Savoie v. Grange Mut. Ins. Co.*, (1993) 67 Ohio St.3d 500, 620 N.E.2d 809, that declared unenforceable a policy limit that provided for all claims for damages resulting from bodily injury, including death, sustained by any one person in any one automobile accident would be consolidated under the limit of the policy applicable to bodily injury, including death, sustained by one person, and to declare such policy provisions enforceable.
§ 10 of SB 20.

fered by one person in one accident, including all damages claimed by any person or organization for care and loss of services.

(Policy at p. 6.) The policy limits as to uninsured motorists coverage are $50,000 per person/$100,000 per accident.

■ In an Ohio contract issue, the Court must use the general rules of construction applicable to contracts. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 436 N.E.2d 1347 (1982). An insurance contract, like any other contract, should be given reasonable construction in conformity with the parties' intent. The parties' intent is to be determined by the words of the contract. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992); *See also Dealers Dairy Products Co. v. Royal Insurance Co.*, 170 Ohio St. 336, 164 N.E.2d 745 (1960). "Common words appearing in a written instrument will be given their ordinary meaning." *Shifrin*, 64 Ohio St.3d at 638, 597 N.E.2d at 501. However, when a contract term is defined within an insurance contract, that definition controls what the term means. *See Watkins v. Brown*, 97 Ohio App.3d 160, 164, 646 N.E.2d 485, 487 (1994). The terms of an insurance contract which are subject to more than one interpretation must be construed against the insurer and in favor of the insured. *Faruque v. Provident Life & Accident Ins. Co.*, 31 Ohio St.3d 34, 38 508 N.E.2d 949, 952 (1987).

In this case, Plaintiff objects to the terminology contained within the uninsured motorist provision as not reflecting the statutory authorized language. Second, Plaintiff takes issue with conflicting language between two limitation provisions in the policy and argues that this demonstrates an intent on the insurer's part to mean something different by use of the differing language. For its part, the Defendant denies that there is a conflict in language between the two policy provisions or that the statute requires the use of certain terminology to achieve the desired effect.

■ The alleged conflicting language referred to by Plaintiff is located under the liability provisions at the beginning of the policy which address the limits of liability as follows:

1. The "each person" limit of liability is the most we will pay for all damages *resulting from* bodily injury to any one person caused by any one occurrence, including all damages for care and loss of services.

(Policy at p. 4.) (Emphasis added.) The uninsured motorist provision declares that the " 'each person' limit of liability is the most we will pay for all damages *because of* bodily injury suffered by one person . . ." (*Id.* at p. 6.) Plaintiff argues that this language is at best ambiguous and should be construed as against the insurer and in favor of the insured.

The Court in *Tomlinson v. Skolnik*, 44 Ohio St.3d 11, 540 N.E.2d 716 (1989) *overruled on other grounds by Schaefer v. Allstate Ins. Co.*, 76 Ohio St.3d 553, 668 N.E.2d 913 (1996), considered a similar argument. In that case, the Court determined that the terms "due to," "for," and "resulting from" were, in fact, synonyms for the terms "because of" or "arising out of" based upon their commonly accepted meanings. Plaintiff advocates interpreting these terms on the same basis.

Webster's Third New World Dictionary defines the term "because of" as follows:

by reason of, on account of <the game was postponed *because of* rain> <*because of* losses the unit was not at full strength>—in reputable use through sometimes disapproved in constructions complementary to expressions of the notion of reason or cause <the reason we do not now have such a trained reserve . . . is *because of* lack of foresight and energy—*N.Y. Times* >

*Id.* at p. 194.

The term "result" is defined as: "to proceed, spring, or arise as a consequence,

effect or conclusion ..." *Id.* at p.1937. Webster's further defines the word "from" as "a function word to indicate a starting point." *Id.* at p. 913. With these definitions in mind, the context in which they are used, it is clear that the commonly accepted meanings of the terms both refer to the ultimate consequence of "bodily injury." There is no demonstrated ambiguity in the terms "because of" or "resulting from" as those terms are commonly used.

█ Plaintiff's next argument is that because language in one provision ("resulting from bodily injury") does not track language in the the uninsured motorist provision ("because of bodily injury"), it falls to comply with the statute. While the statute does *allow* enforcement of policy limitations, it does not *require* specific wording. Rather, the statute requires the policy "include terms and conditions *to the effect* that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such policy limit shall constitute a single claim." (Emphasis added.) Plaintiff fails to present nor has this Court located any case which upholds Plaintiff's position.

Lastly, Plaintiff asserts that the personal injury/survivorship action is separate from the wrongful death claims as they occurred at differing points in time. This argument is also unavailing as the cases relied on by Plaintiff do not apply the O.R.C. § 3937.18(H) as amended by SB 20.

Two Ohio appellate courts have addressed this issue. In *Stickney v. State Farm Mut. Auto. Ins. Co.*, No. 98 CA 7, 1998 WL 753181 (Oct. 19, 1998), following a settlement with the tortfeasor's insurance company, the insured's family members submitted numerous claims under the uninsured motorist provisions of their respective policies which were subsequently denied. The appellate court agreed with the trial court that the limiting language of O.R.C. § 3937.18(H) applied to wrongful

death actions and was constitutionally sound. *See also, Plott v. Colonial Ins. Co.*, 126 Ohio App.3d 416, 710 N.E.2d 740 (1998).

In arriving at their conclusions, both Courts noted that the constitutionality of such limits were not impacted as Article 1, Section 19a of the Ohio Constitution only prohibits "the enactment of laws that place a specific limitation on the amount of damages recoverable by the survivors." *See Smith v. Mancino*, 119 Ohio App.3d 418, 695 N.E.2d 354, 1997 Ohio App. LEXIS 1741 (Apr. 30, 1997). Accordingly, those courts found that SB 20 was constitutional in its limiting the number of claims as to uninsured motorists benefits. Assuming that Plaintiff amends her complaint to reflect an individual claim, she is still bound by the $50,000 limitation in the policy.

## C. Bad Faith

█ An insurer acts in bad faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore. *Zoppo v. Homestead Insd. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), *cert. denied*, 516 U.S. 809, 116 S.Ct. 56, 133 L.Ed.2d 20 (1995). Where the insurer was justified in its refusal of coverage under the language of the policy it does not act in bad faith.

█ In this instance, the Defendant tendered the limits of coverage and advised the Plaintiff that it had "reasonable legal authority that the language in its limits of liability provision was sufficient to limit all the claims of Plaintiff into a single 'each person' limit." (Complaint at ¶ 12.) The fact that the Defendant failed to cite case law to substantiate its position does not, in this particular instance, rise to the level of bad faith as contemplated under *Zoppo*. Certainly in this case, the clear and unambiguous policy language, coupled with the applicable statute, constitute rea-

sonable justification for denial of additional benefits.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Doc. No. 8) is granted. Defendant's motion to strike (Doc. No. 15) is denied as moot. Plaintiff's request for judgment on the pleadings is denied.

IT IS SO ORDERED.